IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARIETTA AREA HEALTHCARE, INC., et al.,

        Plaintiffs,

v.                                      CIVIL ACTION NO.   2:20-cv-00639

MICHAEL A. KING, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiffs' *Complaint* (Document 4), the *Defendants' Joint Motion to Dismiss or Transfer* (Document 13), the *Memorandum in Support of Defendants' Joint Motion to Dismiss or Transfer* (Document 14), the *Plaintiffs' Response to Defendant's Joint Motion to Dismiss or Transfer* (Document 19), and the *Defendants' Joint Reply to Plaintiffs' Response to Defendants' Joint Motion to Dismiss or Transfer* (Document 20).  In addition, the Court has reviewed the *Plaintiffs' Motion for Leave to File Sur-Reply in Opposition to Defendants' Joint Motion to Dismiss or Transfer* (Document 21).   For the reasons stated herein, the Court finds that this matter should be transferred to the Northern District of West Virginia.

**FACTUAL ALLEGATIONS**

The Plaintiffs, Marietta Area Healthcare, Inc., Marietta Memorial Hospital, and Marietta Healthcare Physicians, Inc. (collectively, "Memorial Health"), initiated this suit against Defendants Michael A. King and Michael D. Roberts, M.D., with their complaint filed on September 25, 2020.  Their allegations derive from a previous lawsuit, namely, a False Claims

Act (FCA) complaint that Mr. King and Dr. Roberts brought against Memorial Health as Relators. The Plaintiffs are Ohio corporations with their principal places of business in Ohio. Mr. King is a former officer of Camden Clark Medical Center, a hospital in Parkersburg, West Virginia. He was no longer an officer at the time he initiated the FCA complaint, and the Complaint alleges that he now resides in North Carolina. Dr. Roberts is a surgeon with a private practice in Parkersburg. He is a West Virginia resident.

Memorial Health alleges that the Defendants deliberately made false and unsupported allegations in the FCA complaint, triggering an expensive federal investigation into Memorial Health. After a three-year investigation conducted by the U.S. Attorney's Office for the Northern District of West Virginia, the United States cleared Memorial Health of wrongdoing and declined to intervene in the FCA case. The Defendants dismissed the case.

Prior to the filing of the FCA, Memorial Health was expanding, in part by purchasing local physician practices and forming connections with area medical professionals. Dr. Roberts and his two physician partners at Parkersburg Surgical Associates (PSA) had based their practice largely at Camden Clark. In the summer of 2012, PSA was negotiating for Camden Clark to purchase the practice and employ PSA as the exclusive provider of surgical services for the hospital. PSA also approached Memorial Health about employing the physicians and potentially purchasing the practice, but Memorial Health did not extend an offer. PSA applied for clinical privileges at Memorial Health in September 2012. Dr. Roberts' application was approved on November 1, 2013. Memorial Health was awaiting additional information regarding the other physicians. One of the PSA physicians sent Memorial Health a letter dated November 15, 2013, requesting that the applications for clinical privileges be held in abeyance or withdrawn. The

PSA physicians had received an offer to serve as the exclusive provider of general surgical services at Camden Clark. Mr. King was then the President and CEO of Camden Clark.

In November 2016, the Defendants filed the FCA in the Northern District of West Virginia, asserting that Memorial Health "violated federal law in recruiting and paying physicians and that it inappropriately submitted claims to federal health care programs – Medicare, Medicaid, and Tri-Care – based on those violations." (Compl. at ¶34.) The FCA complaint alleged that "Memorial Health had paid certain physicians in excess of their fair market values in order to induce referrals" in violation of the Stark Law and the Anti-Kickback Statute. (*Id.* at ¶ 47.) The FCA complaint purports to detail meetings that never took place, misstates the content of emails and other communications, falsely claims that Memorial Health offered each of the PSA physicians $500,000 and made illegal employment offers to other physicians, and materially misstates factual allegations that Memorial Health illegally overpaid to acquire, employ, or otherwise contract with physicians and physician practices. (*Id.* at ¶ 50.) Although the allegations that were the subject of the FCA involved medical practices and activity located primarily in the Parkersburg area, the Defendants offered untrue and insufficient statements to support venue in the Northern District of West Virginia.

As a result of the filing of the FCA, the United States began an investigation into Memorial Health that continued for three years. During that time, Memorial Health produced documents and participated in interviews. The federal investigators ultimately found that the claims in the FCA complaint were unsubstantiated and opted not to intervene in the FCA case. The Defendants continued to pursue their *qui tam* action until requesting dismissal on March 20, 2020. The district court granted the dismissal request on March 23, 2020, and entered an amended order on

April 24, 2020. After the April 24, 2020 order, documents, including the FCA complaint, were unsealed and Memorial Health had its first opportunity to review the allegations. (*Id.* at ¶ 52, 56-58, 61.)

Rumors of the investigation interfered with Memorial Health's business. One doctor resigned employment at Memorial Health, and others chose other employment opportunities or to affiliate with other hospitals. Memorial Health began experiencing increasing difficulties with recruitment. It alleges that the FCA complaint caused "decreased revenues, higher expenses, and lost business opportunities." (*Id.* at 68.)

Memorial Health alleges the following causes of action: Count I – Malicious Prosecution; Count II – Tortious Interference with Business Relationships and Expectancies; Count III – Abuse of Process; Count IV – Fraudulent Legal Process in Violation of W. Va. Code § 61-5-27a; and Count V – Punitive Damages. It seeks compensatory and consequential damages plus court costs and expenses, pre-judgment and post-judgment interest, punitive damages, attorneys' fees, and any other relief to which it may be entitled.

**VENUE**

The Defendants contend that the proper venue for this action is the Northern District of West Virginia. The Defendants are not all residents of West Virginia, and so they assert that proper venue is the district "in which a substantial part of the events or omissions giving rise to the claim occurred." (Def.'s Mem. at 7, quoting 28 U.S.C. § 1391(b).) They argue that the claims in this suit all arise from the filing of the *qui tam*, which took place in the Northern District of West Virginia. The Defendants cite cases holding that the proper venue for suits alleging

malicious prosecution or other torts arising from the filing of a previous lawsuit is the venue in which the underlying lawsuit was filed.

The Plaintiffs argue that venue in this District is proper. They contend that the Defendants coordinated their conduct in the Southern District of West Virginia, and the underlying relationships and circumstances developed in the Southern District of West Virginia. They argue that many of the allegations contained in the FCA complaint involve conduct that occurred, or was alleged to have occurred, in the Southern District of West Virginia, and venue for the FCA was not properly in the Northern District of West Virginia.

28 U.S.C. § 1391(b) provides that:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(c)(2) goes on to state that a defendant is a "resident" of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

"[I]t is possible for venue to be proper in more than one judicial district." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). Courts considering whether "a substantial part of the events or omissions giving rise to the claim" occurred in the district are to consider "the entire sequence of events underlying the claim" rather than "only on those matters that are in dispute or that directly led to the filing of the action." *Id.* (quoting *First of Mich. Corp. v. Bramlet,* 141 F.3d

260, 264 (6th Cir.1998)).

When a case is initiated in an improper district or division, Section 1406(a) permits courts to either dismiss the case or transfer it to "any district or division in which it could have been brought." The plaintiff bears the burden of establishing that venue is proper, and must make either a prima facie showing, absent an evidentiary hearing, or demonstrate proper venue by a preponderance of the evidence, if the court hears evidence. *Adhikari v. KBR, Inc.*, No. 115CV1248JCCTCB, 2016 WL 4162012, at *3 (E.D. Va. Aug. 4, 2016).

Courts may also transfer venue "for the convenience of parties and witnesses, in the interest of justice" when venue is proper in both the transferring district and in another district. 28 U.S.C. § 1404(a). The Fourth Circuit has established four factors for consideration in deciding motions to transfer under § 1404(a): "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

The Plaintiffs seek to recover for malicious prosecution, tortious interference with business relationships and expectancies, abuse of process, and fraudulent legal process. Each of their claims arise from the filing of the FCA complaint. The nature of the claims establishes that the underlying suit is the core action or event giving rise to these claims. Although some of the facts supporting the allegations in the FCA complaint arose from actions or relationships in the Southern District of West Virginia, the FCA complaint and ensuing investigation were centered in the Northern District of West Virginia.[1] The Northern District was the site of the allegedly false and

---

1 Given the Plaintiffs' Ohio residence and principal place of business, presumably much of its efforts to cooperate in the investigation occurred there.

abusive claims against the Plaintiffs. The background information included in the instant complaint regarding the relationship and communications between Dr. Roberts and Memorial Health, much of which occurred in Parkersburg, is tangential to the causes of action the Plaintiffs pled. The court that handled the FCA complaint, ruled on motions, and ultimately entered the dismissal, is in the Northern District of West Virginia, as is the U.S. Attorney's Office that investigated the allegations. In short, accepting the allegations in the Complaint as true and viewing the evidence in the light most favorable to the Plaintiffs, only minor, tangential events occurred in the Southern District of West Virginia. The Plaintiffs did not set forth a prima facie showing that a substantial part of the events giving rise to the claim occurred in this district. Therefore, the Court finds that venue is not proper.

Even if venue were permissible under § 1391, the Court would find transfer appropriate under § 1404. The Plaintiffs' choice of venue, of course, would weigh in favor of retaining the case. However, the convenience of witnesses and the parties weighs slightly in favor of transfer. The Plaintiffs are Ohio corporations, and either district is accessible to all parties. Many witnesses, including the investigators who made the decision not to intervene in the FCA case, are based in the Northern District or in Ohio. Dr. Roberts is the only specific party or witness identified in the pleadings as a resident of this District, although the Plaintiffs emphasize that others mentioned in or impacted by the underlying suit reside in the Southern District. Finally, the interest of justice weighs heavily in favor of transfer to the court that handled and is familiar with the underlying FCA complaint, particularly given that portions of the underlying case remain sealed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Joint Motion to Dismiss or Transfer* (Document 13) be **GRANTED** to the extent it requests transfer. The Court further **ORDERS** that this matter be **TRANSFERRED** to the United States District Court for the Northern District of West Virginia, Wheeling Division.

The Court **ORDERS** that the *Plaintiffs' Motion for Leave to File Sur-Reply in Opposition to Defendants' Joint Motion to Dismiss or Transfer* (Document 21) be **TERMINATED AS MOOT** to permit that motion to be addressed by the court where venue is proper.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk for the District Court for the Northern District of West Virginia, counsel of record and to any unrepresented party.

ENTER:   February 16, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

8