**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**MARIETTA AREA HEALTHCARE, INC.,**
**MARIETTA MEMORIAL HOSPITAL**, and
**MARIETTA HEALTHCARE PHYSICIANS, INC.**,

                    Plaintiffs,

          v.                                    **Civil Action No.  5:21-CV-25**
                                                Judge Bailey

**MICHAEL A. KING**, and
**MICHAEL D. ROBERTS, M.D.**,

                    Defendants.


## MEMORANDUM OPINION AND ORDER

Pending before this Court are Defendants' Joint Motion to Dismiss [Doc.  30], Defendants' Joint Motion to Stay Discovery (Including Initial Disclosures) Pending Resolution of Dispositive Motions [Doc.  34] and Defendants' Joint Motion for Protective Order [Doc.  39].

In their Motion to Dismiss, the defendants make several arguments: (1) That plaintiffs' claims are preempted by the False Claims Act, 31 U.S.C. § 3730–3733 ("FCA"); and (2) plaintiffs' malicious prosecution, tortious interference, and abuse of process claims do not state a claim upon which relief may be granted.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); *see also **Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of **plausibility**).  When reviewing a

1

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]. 'A pleading that offers "labels and conclusions" or ... "naked assertion[s]" devoid of "further factual enhancement" will not suffice.'" *Lincoln v. Ford Motor Co.*, 2020 WL 582095, at *3 (D. Md. Sept. 29, 2020) (Bredar, C.J.) (quoting *Twombly*, 550 U.S. at 555, 557).

In November 2016, the defendants filed a qui tam complaint alleging that plaintiffs had violated federal law in recruiting and compensating physicians and had inappropriately submitted claims to federal healthcare programs based on those violations (the "Underlying Action"). The plaintiffs contend that the complaint consisted largely of false and materially misstated allegations, which the defendants knew at the time. According to the plaintiffs, after filing their qui tam complaint, the defendants continued to push their false and malicious accusations against plaintiffs. During the ensuing federal investigation, the defendants perpetuated those accusations, repeating the known falsities and material misstatements. The defendants knew and intended that the qui tam complaint and subsequent process would harm the plaintiffs' business—a healthcare system on the Ohio border that is well known and respected in the Mid-Ohio Valley, including several counties

2

in West Virginia. After numerous extensions, the Government declined to intervene in the action.

"*Qui tam* is short for *'qui tam pro domino rege quam pro se ipso in hac parte sequitur,'* which means 'who pursues this action on our Lord the King's behalf as well as his own.'" ***Rockwell Int'l. Corp. v. United States***, 549 U.S. 457, 463 n.2 (2007). The False Claims Act's qui tam provision allows "a private plaintiff, known as a relator, [to] bring[ ] suit on behalf of the Government to recover a remedy for a harm done to the Government." ***Woods v. Empire Health Choice, Inc.***, 574 F.3d 92, 97 (2d Cir. 2009); *see* 31 U.S.C. § 3730(b). As the "real party in interest" in a qui tam action, ***United States ex rel. Eisenstein v. City of New York, New York***, 556 U.S. 928, 930 (2009), the Government may intervene and take over prosecution of the lawsuit, 31 U.S.C. § 3730(b)(2), (4). In such cases, however, the relator is still entitled to a share of any recovery. 31 U.S.C. § 3730(d). ***United States v. Quest Diagnostics Inc.***, 734 F.3d 154, 158 (2d Cir. 2013)

The defendants contend that the FCA preempts any damages action in this case. "[F]ederal preemption is based on the Supremacy Clause, which provides that federal law 'shall be the supreme Law of the Land.'" ***Simmons v. Sabine River Auth. La.***, 732 F.3d 469, 473 (5th Cir. 2013) (quoting **U.S. CONST. ART. VI, CL. 2**). "Preemption radically alters the balance of state and federal authority, so the Supreme Court has historically refused to impose that alteration interstitially." ***White Buffalo Ventures, LLC v. Univ. of Tex. at Austin***, 420 F.3d 366, 370 (5th Cir. 2005) (citing ***Gregory v. Ashcroft***, 501 U.S. 452, 460 (1991)). This principle has been expressed as "a presumption against preemption of state

law." *Id*. (citations omitted). ***United States ex rel. Rigsby v. State Farm Fire & Cas. Co.***, 2015 WL 13649420, at *6 (S.D. Miss. Aug. 6, 2015) (Ozerden, J.).

"Federal law will preempt and displace state law in three circumstances: (1) when Congress enacts a statute that explicitly preempts state law; (2) when Congress regulates in such a pervasive manner that it can be inferred Congress intended to displace state law in the field and; (3) when state law actually conflicts with federal law. *See, e.g.,* ***English v. Gen. Elec. Co.***, 496 U.S. 72, 78–79 (1990)." ***Glynn v. EDO Corp.***, 536 F.Supp.2d 595, 609 (D. Md. 2008) (Motz, J.).

"Of course, our preemption inquiry must '"start [ ] with the basic assumption that Congress did not intend to displace state law."' ***S. Blasting*** [***Servs., Inc.   v.   Wilkes County***], 288 F.3d at 589 (quoting ***Maryland v. Louisiana***, 451 U.S. 725, 746 (1981)); *see also* ***Cipollone*** [***v.   Liggett Group, Inc.***], 505 U.S. at 516 ('Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress.' (internal quotation marks and alterations omitted)).  The purpose of Congress is therefore the 'ultimate touchstone' of a preemption analysis. ***Cipollone***, 505 U.S. at 516 (internal quotation marks omitted).  As a general proposition, the presumption that Congress did not intend to preempt state law is especially strong when it has legislated '"in a field which the States have traditionally occupied,"' such as 'protecting the health and safety of their citizens.' ***S. Blasting***, 288 F.3d at 590 (quoting ***Medtronic, Inc. v. Lohr***, 518 U.S. 470, 485 (1996) (internal quotation marks omitted)); *see also* ***Abbot v. Am. Cyanamid Co.***, 844 F.2d 1108, 1112 (4th Cir. 1988).  And, the

presumption is stronger still 'against preemption of state remedies, like tort recoveries, when no federal remedy exists.' *Abbot*, 844 F.2d at 1112 (citing *Silkwood* [*v. Kerr-McGee Corp.*], 464 U.S. at 251, 104 S.Ct. 615)." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 (4th Cir. 2007).

In making their argument, the defendants cite numerous cases and provide a primer on determining whether preemption exists. They do not, however, cite to any case in which a court found that the FCA in fact preempted state remedies for improper conduct - presumably because there are none.

The plaintiffs, on the other hand, cite a number of cases which find no preemption. *See e.g. Salazar v. Monaco Enterprises, Inc.*, 2015 WL 5716000, at *2 (E.D. Wash. Sept. 29, 2015) ("Defendants contend the False Claims Act ("FCA") provides an exclusive remedy. The published case law on this point holds to the contrary. *E.g., Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936 (7th Cir. 2002) ('There is nothing in § 3730(h) to lead us to believe that Congress intended to preempt all state law retaliatory discharge claims based on allegations of fraud on the government.'); *Glynn v. EDO Corp.*, 536 F.Supp.2d 595 (D. Md. 2008) ('complementary remedies do not give rise to an inference of Congressional intent to preempt'); *Hoefer v. Fluor Daniel, Inc.*, 92 F.Supp.2d 1055 (C.D. Cal. 2000); *Palladino v. VNA of Southern N.J.*, 68 F.Supp.2d 455 (D. N.J. June 30, 1999) (holding no congressional intent to occupy the field of retaliatory discharge to the exclusion of the states). The Court finds these cases persuasive on the issue of preemption.").

"As one court recognized, '[w]hile the [FCA] *permits* any person ... to bring a *qui tam* suit, it does not authorize that person to violate state laws in the process.'" *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 163 (2d Cir. 2013) (quoting *United States ex rel. Doe v. X. Corp.*, 862 F.Supp. 1502, 1507 (E.D. Va. 1994) (Ellis, J.) (emphasis supplied).

The case law also makes clear that a defendant can bring state law claims which are independent of a finding of liability on the part of the defendant. "Counterclaims for indemnification or contribution by definition *only* have the effect of offsetting liability. Counterclaims for independent damages are distinguishable, however, because they are not dependant on a qui tam defendant's liability." *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830–31 (9th Cir. 1993).

The *Madden* Court added:

To some extent a qui tam defendant's interests are adequately protected by specific provisions of the FCA. Section 3730(d)(4) of the FCA provides that a court may award the defendant reasonable attorney's fees and expenses if the defendant prevails and the action was brought in bad faith. Moreover, § 3730(d)(3) limits the award of a qui tam plaintiff deemed to be a wrongdoer.

These remedies are inadequate for two reasons, however. First, recovering damages under the FCA's attorney's fees provision is difficult because of the exacting standards that must be met. Under § 3730(d)(4) a qui tam defendant must establish that the plaintiff's action was clearly

6

frivolous, clearly vexatious or brought primarily for the purpose of harassment.   Second, these remedies do not provide for complete compensation.  A qui tam defendant is not made whole because it is unable to recover for the actual harm it suffered as a result of the relator's conduct.

Thus, we hold that qui tam defendants can bring counterclaims for independent damages.  . . .

We recognize that our decision may encourage qui tam defendants to bring counterclaims for independent damages instead of indemnification. However, we do not think this will result in an end run around *Mortgages*. As the court in *United States ex rel. Burch* suggested, it is possible to resolve the issue of a qui tam defendant's liability before reaching the qui tam defendant's counterclaims.   145 F.R.D. at 457–58.   If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution.   On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits.

4 F.3d at 831.  *See also, United States ex rel.  Battiata, M.D. v.  Puchalski, M.D.*, 906 F.Supp.2d 451, 457 (D.S.C. 2012) (Currie, J.).

Similarly, in *United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, Judge Lamberth held:

On the other hand, courts have held that "a qui tam defendant may maintain a claim for independent damages; that is, a claim that is not dependent on

a finding that the qui tam defendant is liable." *United States ex rel. Stephens v. Prabhu*, 1994 WL 761237, at *1 (D. Nev. 1994). These cases recognize that not all counterclaims in FCA cases will be contrary to the statute's interests, and that there would be real due process concerns if *all* counterclaims were to be barred, particularly compulsory ones, which would be lost forever. *See Burch ex rel. U.S. v. Piqua Engineering, Inc.*, 145 F.R.D. 452, 456–57 (S.D. Ohio 1992) (expressing due process concerns); *Madden*, 4 F.3d at 830–31 (same); Kent D. Strader, Comment: *Counterclaims Against Whistleblowers: Should Counterclaims Against Qui Tam Plaintiffs be Allowed in False Claims Act Cases?*, 62 U. Cinn. L.Rev. 713 (1993) (same). For these reasons, it has been said that "the modern trend does not support a ban on compulsory counterclaims which are based on damages which are 'independent' of the qui tam claim." *United States ex rel. Mikes v. Straus*, 931 F.Supp. 248, 263 (S.D. N.Y. 1996). Yet at the same time, these cases have warned that "[i]f a qui tam defendant is found liable the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution." *United States ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 830–31 (9th Cir. 1993).

.    .    .

The second category of permissible claims by an FCA defendant is where the defendant's claim, though bound up in the facts of the FCA case, can

8

only prevail if the defendant is found *not* liable in the FCA case.  This is where the word "independent" has sewn confusion.  These claims are actually quite dependent, but they depend on a finding that the FCA defendant is not liable, whereas the impermissible class of claims depend on the FCA defendant being found liable.  The FCA defendant thus has a cause of action for damage to him independent of his FCA liability.  These claims have surfaced in the form of libel, defamation, malicious prosecution, and abuse of process—claims that succeed upon a finding that the relator's accusations were untrue.  Once the question of FCA liability has been determined in the defendant's favor, there is less of the risk, envisioned by *Mortgages* and other cases, of deterring would-be relators, and no risk that a wrongdoer will be allowed to shift its costs.  The simple rule that emerges from these cases is therefore that a claim by an FCA defendant which requires for its success a finding that the FCA defendant is liable is the kind of claim barred by the FCA.

These cases demonstrate that there are two ways in which an FCA defendant's counterclaim may seek "independent damages" and thus be permissible.  The use of the word "independent" has led to some confusion, and courts would be better served to describe the permissible claims as "not dependent on the fact of FCA liability."  In short form, claims by an FCA defendant have been properly permitted where the success of the FCA defendant's claim does not *require* a finding that the defendant is liable in the FCA case.

9

505 F.Supp.2d 20, 27–28 (D. D.C.  2007) (Lamberth, J.).

Finally, in *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, Judge Ozerden added:

> The Ninth Circuit has held that there is "no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action" and that "there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result." *Mortgages [Inc. v. U.S. Dist. Ct. For Dist. Of Nev. (Las Vegas)]*, 934 F.2d at 214.  The Ninth Circuit has distinguished counterclaims which seek "independent damages" from those which seek indemnification and/or contribution. *Cell Therapeutics [Inc. v. Lash Group, Inc.]*, 586 F.3d at 1208 (citing *Madden*, 4 F.3d at 831).  "It is incumbent on the district court to separate those claims which '*only* have the effect of offsetting liability' from those that are not dependent on a qui tam defendant's liability under the FCA." *Id.* at 1209 (quoting *Madden*, 4 F.3d at 831) (emphasis in original).  Claims falling into the latter category are not precluded, while the former ones "must be dismissed if [the *qui tam* defendant] is liable under the FCA." *Id.* at 1210 (citing *Madden*, 4 F.3d at 831).  The Court finds this reasoning persuasive.

2015 WL 13649420, at *6 (S.D. Miss. Aug. 6, 2015)

Based upon all the foregoing, this Court finds that there is nothing in the FCA which prevents the plaintiff from maintaining its state court actions against these defendants.

Next the defendants seek to dismiss three of the plaintiffs' four causes of action for failure to state a claim. In their complaint, the plaintiffs assert claims for malicious prosecution, tortious interference with business relationships and expectancies, abuse of process, and faudulent legal process in violation of W.Va. Code § 61-5-27a.[1]

With respect to malicious prosecution, to successfully state a claim for malicious prosecution at the pleading stage, a plaintiff must allege that "'(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff.'" *See* Syl. Pt. 1, ***Norfolk S. Ry. Co. v. Higginbotham***, 228 W.Va. 522, 721 S.E.2d 541 (2011) (citation omitted); see also *id*. at 527, 546 (holding that both delineations of a malicious prosecution claim announced by the West Virginia Supreme Court "are the same").

The complaint alleges just that: defendants maliciously initiated and continued a qui tam action against plaintiffs that was based on knowing falsities and that was ultimately terminated in plaintiffs' favor by a district court order. The defendants seek dismissal on the basis that the fact that the underlying action was dismissed without prejudice bars a claim for malicious prosecution.

The plaintiffs point to Syl. Pt. 3, ***Vinal v. Core***, which states that "By the first of these requirements is meant that the plaintiff must have been arrested under a process not absolutely void; and by its being ended is meant, not that the plaintiff had been so discharged, as that no subsequent prosecution for the same alleged crime could ever be

---

[1] Plaintiffs also list a claim for punitive damages. However, punitive damages are not a cause of action but rather an assertion of damages.

instituted, but only that this particular prosecution was ended, when this was the allegation in the declaration."  18 W.Va. 1 (1881).

This Court finds that the cases cited by the defendants are inapposite.  While both ***Goodwin v. City of Shepherdstown***, 241 W.Va. 416, 825 S.E.2d 363, 369 (2019) and ***Owens v. Baltimore City State's Attorneys Office***, 767 F.3d 379 (4th Cir. 2014), discuss a requirement that the underlying proceeding be terminated such that it could not be raised again, ***Goodwin*** dealt with a criminal matter where the case was dismissed without prejudice "for now," and ***Owens*** dealt with the grant of a new trial under Maryland law.  The facts of this case are much different.  The complaint was dismissed without prejudice before the now plaintiffs were even aware of the action.  The dismissal ended that action.  While the notation of without prejudice means that a new case could be filed, this case is ended.

What would the opposite finding mean?  It would mean that any time an action is dismissed without prejudice and not re-filed, there could **never** be an action for malicious prosecution.

This Court finds that the plaintiffs have stated a claim for malicious prosecution.

With respect to the tortious interference claim, the defendants contend that the same is barred by the litigation privilege.  According to Justice Davis' statements in her concurrence in ***Barefield v.  DPIC Companies, Inc.***, 215 W.Va. 544, 600 S.E.2d 256 (2004):

Under the litigation privilege, " '[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is ... privileged and

cannot constitute the basis of a civil action[.]' " *Jenevein v. Friedman*, 114 S.W.3d 743, 745 (Tex.App.2003) quoting *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942). *See also Collins v. Red Roof Inns, Inc.*, 211 W.Va. 458, 461–66, 566 S.E.2d 595, 598–603 (2002) (discussing litigation privilege) . "This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 917–18 (Tex.1982). The public

> policies associated with the litigation privilege include: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement."

*Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 693 (2003). "[T]he litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, ... and ... interference with

contract and prospective economic advantage." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1132, 270 Cal.Rptr. 1, 791 P.2d 587 (1990) (citation omitted). *But see Baglini v. Lauletta*, 338 N.J.Super. 282, 768 A.2d 825, 833–34 (2001) ("The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process.").

*Barefield v. DPIC Companies, Inc.*, 215 W.Va. 544, 560, 600 S.E.2d 256, 272 (2004) (Davis, J., concurring). *See BriovaRx, LLC v. Johnson*, 2014 WL 12744704, at *3 (S.D. W.Va. July 2, 2014) (Chambers, C.J.).

Finally, with respect to the claim for abuse of process, under West Virginia law "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by the process." *Preiser v. MacQueen*, 177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985). The defendants argue that it is wrongful actions taken after the issuance of process which support a claim of abuse of process.

The plaintiffs, however, have suitably alleged actions taken by the defendants after the issuance of process. This claim will not be dismissed.

For the reasons stated above, the Defendants' Joint Motion to Dismiss [**Doc. 30**] will be **GRANTED IN PART AND DENIED IN PART**. Count II of the complaint is **DISMISSED**. In all other respects, the Motion is **DENIED**.

Defendants' Joint Motion to Stay Discovery (Including Initial Disclosures) Pending Resolution of Dispositive Motions [**Doc. 34**] and Defendants' Joint Motion for Protective Order [**Doc. 39**] are **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to all counsel on record.

**DATED:** April 28, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE