**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**MARIETTA AREA HEALTHCARE, INC.,
MARIETTA MEMORIAL HOSPITAL**, and
**MARIETTA HEALTHCARE PHYSICIANS, INC**.,

                Plaintiffs,

      v.                              **Civil Action No.  5:21-CV-25**
                                       Judge Bailey

**MICHAEL A. KING** and
**TODD A. KRUGER**,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Defendants Michael A. King, Michael D. Roberts, M.D.,[1]

and Todd Kruger's Motion for Summary Judgment [Doc. 328], filed January 3, 2023.  A

Response [Doc. 356] was filed on February 6, 2023.  A Reply [Doc. 420] was filed on

February 15, 2023.  Having been fully briefed, this matter is ripe for adjudication.  For the

reasons that follow, this Court will deny Defendants Michael A. King, Michael D. Roberts,

M.D., and Todd Kruger's Motion for Summary Judgment.

## BACKGROUND

As this Court laid out in its April 28, 2021 Order:

---

[1] On February 2, 2023, plaintiffs and defendant Michael D. Roberts, M.D. mutually resolved the matter between them, rendering defendant Roberts' portion of Defendants' Joint Motion for Summary Judgment moot.

In November 2016, the defendants filed a qui tam complaint alleging that plaintiffs had violated federal law in recruiting and compensating physicians and had inappropriately submitted claims to federal healthcare programs based on those violations (the "Underlying Action").  The plaintiffs contend that the complaint consisted largely of false and materially misstated allegations, which the defendants knew at the time.  According to the plaintiffs, after filing their qui tam complaint, the defendants continued to push their false and malicious accusations against plaintiffs.  During the ensuing federal investigation, the defendants perpetuated those accusations, repeating the known falsities and material misstatements.  The defendants knew and intended that the qui tam complaint and subsequent process would harm the plaintiffs' business—a healthcare system on the Ohio border that is well known and respected in the Mid-Ohio Valley, including several counties in West Virginia.  After numerous extensions, the Government declined to intervene in the action.

"*Qui tam* is short for *'qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" **Rockwell Int'l. Corp. v. United States**, 549 U.S. 457, 463 n.2 (2007).  The False Claims Act's qui tam provision allows "a private plaintiff, known as a relator, [to] bring[ ] suit on behalf of the Government to recover a remedy for a harm done to the Government." **Woods v. Empire Health Choice, Inc.**, 574 F.3d 92, 97 (2d Cir. 2009); *see*

31 U.S.C. § 3730(b).  As the "real party in interest" in a qui tam action, ***United States ex rel. Eisenstein v. City of New York, New York***, 556 U.S. 928, 930 (2009), the Government may intervene and take over prosecution of the lawsuit, 31 U.S.C. § 3730(b)(2), (4).  In such cases, however, the relator is still entitled to a share of any recovery.  31 U.S.C. § 3730(d). ***United States v. Quest Diagnostics Inc.***, 734 F.3d 154, 158 (2d Cir. 2013). [Doc. 40 at 2–3].

In its Amended Complaint, plaintiffs assert five[2] causes of action:

Count I - Malicious Prosecution [Doc. 107 at 17–19]

Count II - Tortious Interference with Business Relationships and Expectancies [Id. at 19–20]

Count III - Abuse of Process [Id. at 20–22]

Count IV - Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a [Id. at 22–23]

Count V - Civil Conspiracy [Id. at 23–24]

On January 3 2023, defendants Michael A. King, Michael D. Roberts, M.D., and Todd A. Kruger (hereinafter "Defendants") filed a Motion for Summary Judgment [Doc. 328] and accompanying Memorandum of Law in Support [Doc. 329].  Therein, Defendants

---

[2] Plaintiffs also assert a claim for punitive damages.  However, punitive damages are not a cause of action but rather an assertion of damages.  In plaintiffs' Response to Defendants' Joint Motion to Dismiss and/or Alternatively for Summary Judgment as to Plaintiffs' Amended Complaint, plaintiffs "do not oppose the dismissal of the Count of the Amended Complaint styled as a punitive damages claim.  However, Plaintiffs continue to pursue, and do not waive, their punitive damages request, which Plaintiffs believe is appropriate."  *See* [Doc. 125 at 23, fn.11].

assert that the evidence adduced in this case shows that plaintiffs' claims "completely lack merit and are barred as a matter of law."  *See* [Doc. 328 at 1].

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show

4

absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations omitted).  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

### I.    Litigation Privilege

Defendants first allege they are entitled to summary judgment as to plaintiffs' causes of action for tortious interference with business relationships (Count II), abuse of process (Count III), and fraudulent legal process (Count IV) as the litigation privilege bars such claims as a matter of law.  *See* [Doc. 329 at 25–26].  In support, defendants state the "litigation privilege would be meaningless if a plaintiff could defeat its protections by simply claiming that the defendant acted in concert with a non-party to the subject litigation."  *See* [Id. at 26].  Defendants assert the contributions of a non-party to conduct otherwise

protected by the litigation privilege applies as a matter of law, regardless of whether defendants acted together.  *See* [id.].

In response, plaintiffs assert that the litigation privilege does not bar any of plaintiffs' claims.  *See* [Doc. 356 at 20–22].  Plaintiffs argue that the record "unambiguously demonstrates that all three Defendants conspired together to plan, initiate, and pursue the underlying action *against* Plaintiffs." *See* [id. at 21].  Plaintiffs further state that defendants do not cite any updated law which would require this Court to change its mind about the applicability of the litigation privilege.

According to Justice Davis' statements in her concurrence in **Barefield v. DPIC Companies, Inc.**, 215 W.Va. 544, 600 S.E.2d 256 (2006):

> Under the litigation privilege, " '[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is ... privileged and cannot constitute the basis of a civil action[.]' " **Jenevein v. Friedman**, 114 S.W.3d 743, 745 (Tex. App. 2003) quoting **Reagan v. Guardian Life Ins. Co.**, 140 Tex. 105, 166 S.W.2d 909, 912 (1942).  *See also* **Collins v. Red Roof Inns, Inc.**, 211 W.Va. 458, 461–66, 566 S.E.2d 595, 598–603 (2002) (discussing litigation privilege).  "This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." **James v. Brown**, 637 S.W.2d 914, 917–18 (Tex. 1982).  The public

6

policies associated with the litigation privilege include: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

*Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 693 (2003).  "[T]he litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, ... and ... interference with contract and prospective economic advantage."  *Pacific Gas & Elec. Co. v. Bear Sterns & Co.*, 50 Cal.3d 1118, 1132, 270 Cal.Rptr. 1, 791 P.2d 587 (1990) (citation omitted).  *But see Baglini v. Lauletta*, 338 N.J.Super. 282, 768 A.2d 825, 833–34 (2001) ("The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process.").

215 W.Va. 544, 560, 600 S.E.2d 256, 272 (2004) (Davis, J., concurring).  *See BriovaRx, LLC v. Johnson*, 2014 WL 12744704, at *3 (S.D. W.Va. July 2, 2014) (Chambers, C.J.).

There is clearly a material fact in dispute as to whether defendants were in concerted efforts against plaintiffs.  As this Court has previously held: "The litigation privilege does not apply to Defendants King and Roberts if it is found that all three

defendants were in concerted efforts against plaintiffs." *See* [Doc. 134 at 11].  This Court again rejects defendants' arguments regarding the litigation privilege and **DENIES** summary judgment under the litigation privilege as to plaintiffs' cause of action for tortious interference with business relationships, abuse of process, and fraudulent legal process.

## II.    Count I - Malicious Prosecution

To prevail on a claim for malicious prosecution, a plaintiff must allege that "(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." *See* Syl. Pt. 1, ***Norfolk S. Ry. Co. v. Higginbotham***, 228 W.Va. 522, 721 S.E.2d 541 (2001) (citation omitted).

### a.    Advice of Counsel Defense

On defendants' fourth time around, they now argue that the defense of advice of counsel precludes plaintiffs' claim for malicious prosecution.  *See* [Doc. 329 at 26–27].

With respect to the advice of counsel defense, the West Virginia Supreme Court of Appeals has stated that "[a] suit, action or proceeding, prosecuted in good faith, and on advice of reputable counsel obtained after a fair and accurate disclosure to counsel of the facts on which advice is sought, may not serve as the basis of an action for malicious prosecution."  Syl. Pt. 5, ***Hunter v. Beckley Newspapers Corp.***, 129 W.Va. 302, 40 S.E.2d 332 (1946).  "[T]he mere fact of reliance upon the advice of counsel does not establish the defense in a malicious prosecution case.  Full disclosure of the facts to an attorney, request for the attorney's advice as to the legality of the contemplated action, advice that the action was legal, and reliance upon the advice in good faith must be proven to establish the defense." ***Sheetz, Inc. v. Bowles Rice McDavid Graff & Love***, 209 W.Va

318, 326 n.5, 547 S.E.2d 256, 264 (2001) (citing ***Powers v. Goodwin***, 174 W.Va. 287, 324

S.E.2d 701 (1984)).  Acting on advice of counsel can be an absolute defense to a claim

of malicious prosecution.  ***Powers***, 174 W.Va. at 291, 324 S.E.2d at 705.

Defendants argue that they "relied on the advice of Bryan Vroon, counsel

experienced in filing successful *qui tam* actions, and provided Vroon numerous documents

supporting the allegations in the Underlying Complaint, whose accuracy Plaintiffs neither

can nor do contest."  *See* [Doc. 329 at 27].  Defendants assert that based on the numerous

documents, Bryan Vroon determined that defendants' allegations were substantiated and

stated claims for Stark Act and AKS violations.

In response, plaintiffs argue that the defense of advice of counsel does not preclude

the claim for malicious prosecution because there is a dispute as to whether defendants'

reliance on Mr. Vroon's advice was reasonable or made in good faith.  Plaintiffs assert that

they have challenged the reasonableness of defendants reliance on the advice of their

counsel, Mr. Vroon, throughout this litigation.  Moreover, plaintiffs state that by way of

discovery, plaintiffs have "discovered ample evidence indicating that Defendants did not

disclose pertinent facts regarding the allegations in the underlying qui tam complaint to Mr.

Vroon."  *See* [Doc. 356 at 30].  Plaintiffs also add that even if defendants had disclosed

pertinent information, their counsel's failure to independently verify any of the allegations

contained in the underlying complaint render his advice unreasonable.

This Court agrees with plaintiffs.  Summary judgment is not appropriate at this time based on the defense of the advice of counsel because there is a genuine issue as to whether defendants' reliance on Mr. Vroon's advice was reasonable and made in good faith.

**b.      Elements of Malicious Prosecution**

As stated above, plaintiffs must prove "'(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff.'"  *See* Syl. Pt. 1, ***Norfolk S. Ry. Co.***, 228 W.Va. 522, 721 S.E.2d 541.  This Court has previously held that plaintiffs have stated a claim for malicious prosecution.  *See* [Doc. 40 at 12; Doc. 51; Doc. 134 at 8].

As this Court has twice previously held: "The [Amended] complaint alleges just that: defendants maliciously initiated and continued a qui tam action against plaintiffs that was based on knowing falsities and that was ultimately terminated in plaintiffs' favor by a district court order."  *See* [Doc. 40 at 11 & Doc. 134 at 7].

Defendants yet again seek summary judgment on the basis that plaintiffs cannot meet the required elements.  *See* [Doc. 329 at 27–33].  Defendants assert: (1) the *qui tam* action did not terminate in plaintiffs' favor [Doc. 329 at 27–30]; (2) defendants did not procure the prosecution of plaintiffs [Id. at 30]; (3) the *qui tam* action was supported by probable cause [Id. at 30–32]; and (4) the undisputed material facts demonstrate that defendants did not act with malice [Id. at 33].

In response, plaintiffs assert: (1) defendants procured the prosecution of the underlying action [Doc. 359 at 22–23]; (2) the *qui tam* action terminated in plaintiffs' favor

[Id. at 23–25]; (3) defendants did not have probable cause to support the underlying *qui tam* [Id. at 25–27]; and (4) defendants acted with malice when they initiated a fallacious *qui tam* unsupported by evidence to harm their biggest competitor [Id. at 27–29].

In reply, defendants argue that the *qui tam* action did not terminate in plaintiffs' favor; that the *qui tam* action was unquestionably supported by probable cause; and that the undisputed material facts demonstrate that defendants did not act with malice. *See* [Doc. 420 at 17–20].

###       i.       Procurement

Under West Virginia law, to prove procurement, one "must have shown that the defendants consulted with and advised each other regarding the prosecution, that the defendants participated in the prosecution, and that the prosecution was carried out under the defendants' countenance and approval." ***Norfolk S. Ry. Co.***, 228 W.Va. at 528, 721 S.E.2d at 547.  "[I]t is apparent that procurement within the meaning of a malicious prosecution suit requires more than just the submission of a case to a prosecutor; it requires that a defendant assert control over the pursuit of the prosecution." ***Id***.

Defendants argue that they did not procure the prosecution of plaintiffs. *See* [Doc. 329 at 30].  Defendants assert that they initiated the underlying *qui tam* suit and the Government investigated.  Defendants argue that there "is nothing to indicate that any steps toward prosecution of the *qui tam* suit were taken after the evidence was left in the hands of the government, the government declined to intervene, and Defendants then dismissed the suit without prejudice prior to serving the same on Plaintiffs." *See* [Id.].

In response, plaintiffs argue defendants did procure the prosecution because "the record unambiguously demonstrated that Defendants provided false or materially misstated information in the initiation and ultimate filing of the Underlying Complaint, as well as in dealing with investigators." *See* [Doc. 356 at 22]. Additionally, plaintiffs assert that "[w]hile the Government chose not to prosecute the claims against Plaintiffs based on their investigation, Defendants continued to attempt to convince the Government to intervene and move forward with a *qui tam* lawsuit even after knowing the Government had decided otherwise. *See* Exhibit 59; Exhibit 57; Exhibit 3, at 476, 686." *See* [Id. at 23].

There is a genuine issue of material fact as to whether the procurement element is satisfied.

### ii. *Qui tam* action termination

Defendants again rely on ***Goodwin v. City of Shepherdstown***, 241 W.Va. 416, 825 S.E.2d 353, 396 (2019) to argue the *qui tam* action did not terminate in plaintiffs' favor. *See also* [Doc. 420 at 17–18]. This Court already stated:

> This Court finds that the cases cited by the defendants are inapposite. While ***Goodwin v. City of Shepherdstown***, 241 W.Va. 416, 825 S.E.2d 363, 369 (2019) . . . discuss[es] a requirement that the underlying proceeding be terminated such that it could not be raised again, ***Goodwin*** dealt with a criminal matter where the case was dismissed without prejudice "for now. . . ." The facts of this case are much different. The complaint was dismissed without prejudice before the now plaintiffs were even aware of the action.

The dismissal ended that action.  While the notation of without prejudice means that a new case could be filed, this case is ended.

What would the opposite finding mean?  It would mean that any time an action is dismissed without prejudice and not re-filed, there could **never** be an action for malicious prosecution.

[Doc. 40 at 12 & Doc. 134 at 7–8].

Plaintiffs again point to Syl. Pt. 3, *Vinal v. Core*, 18 W.Va. 1 (1881), *superceded by statute on other grounds*.  As stated in this Court's previous order:

*Vinal v. Core*, which states that "By the first of these requirements is meant that the plaintiff must have been arrested under a process not absolutely void; and by its being ended is meant, not that the plaintiff had been so discharged, as that no subsequent prosecution for the same alleged crime could ever be instituted, but only that this particular prosecution was ended, when this was the allegation in the declaration."  18 W.Va. 1 (1881).

[Id. at 11–12].

Like this Court has previously held, defendants have satisfied this element.  As this Court previously stated: "What would the opposite finding mean?  It would mean that any time an action is dismissed without prejudice and not re-filed, there could **never** be an action for malicious prosecution."  The termination of the underlying action and the circumstances surrounding it have not changed.  The Underlying Action was terminated in plaintiffs favor.  Thus, the *qui tam* action terminated in plaintiffs' favor and plaintiffs' have satisfied the favorable termination element.  Thus, summary judgment is not appropriate.

13

### iii.    Probable Cause

"'Probable cause for instituting a prosecution is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty.'" ***Truman v. Fidelity & Cas. Co. of N.Y.***, 146 W.Va. 707, 722–23, 123 S.E.2d 59, 69 (1961) (quoting Syl. Pt. 2, ***Radochio v. Katzen***, 92 W.Va. 340, 114 S.E. 746 (1922)).  "In a civil action for malicious prosecution, the issues of malice and probable cause become questions of law for the court where the evidence pertaining thereto is without conflict, or, though conflicting in some respects, is of such nature that only one inference may be drawn therefrom by reasonable minds."  Syl. Pt. 7, ***Truman***, 146 W.Va. 707, 123 S.E.2d 59.  On the question of probable cause, "the facts, circumstances, knowledge and information must be viewed from the standpoint of the defendant, rather than from the standpoint of the plaintiff."  ***Id***. at 723, 123 S.E.2d at 69 (citing Syl. Pt. 15, ***Porter v. Mack & Boren***, 50 W.Va. 581, 40 S.E. 459 (1901)).

Defendants argue that the *qui tam* action was supported by probable cause.  *See* [Doc. 329 at 30–32].  In support, defendants argue that ample probable cause existed to support the filing of the Underlying Complaint.  For example, defendants state "[v]oluminous evidence . . . shows that there was probable cause for the Relators to allege that Marietta overpaid multiple physicians for the purpose of obtaining patient referrals." *See* [Id. at 32].  Additionally, defendants argue "the fact the government filed memorandums in this Court explaining the progress of its investigation and intention to

discuss settlement and non-litigative resolutions with the plaintiffs" confirms the existence of probable cause.  [Id.].  *See also* [Doc. 420 at 18–19].

In response, plaintiffs assert that "[i]f this Court were to adopt Defendants' interpretation of probable cause, it would be forced to overlook the countless disputes of material fact, Defendants' own failure to investigate their own claims, and that discovery has shown the falsity of Defendants' allegations."  *See* [Doc. 356 at 27].

This Court has previously held that plaintiffs have stated a claim for malicious prosecution.  However, at this stage of the proceeding, there is a genuine issue of material fact as to whether the probable cause element is satisfied.  Thus, summary judgment is not appropriate.

### iv.    Malice

"In civil malicious prosecution cases, the issue of malice and probable cause become questions of law for the court where there is no conflict of evidence or where there is only one inference to be drawn by reasonable minds."  ***Baldau v. Jonkers***, 229 W.Va. 1, 11, 725 S.E.2d 170, 179 (2011) (citing ***Truman***, 146 W.Va. at 724, 123 S.E.2d at 70)).

Defendants argue that there are "undisputed material facts . . . that demonstrate that the employment offer at issue was made by [Scott] Cantley to the PSA physicians."  *See* [Doc. 329 at 33].  Moreover, defendants state "undisputed material facts demonstrate that Marietta Memorial overpaid physicians and show, at a minimum, that a correlation between overcompensation of physicians and increased referrals within the Marietta system."  *See* [id].  Defendants also allege that plaintiffs have "altogether failed to provide any evidence

of an improper or alternative motive for the Underlying Complaint."   [Id.].   *See also* [Doc. 420 at 19–20].

In response, plaintiffs argue it is clear that defendants acted with malice when initiating the Underlying Action.  *See* [Doc. 356 at 27–29].  For example, plaintiffs state that emails between defendant Kruger and John Vickers in which the two discuss the benefits of bringing down Marietta Memorial show malice.  *See* [Doc. 356-3 at 33 ("I hate those crooked fuckers. . . .  They are a criminal enterprise in my opinion. . . .")].  Defendant Kruger and John Vickers also discuss bringing down Marietta Memorial.  *See* [Doc. 356-20 at 23;  Doc. 356-3 at 8 ("Anything new on the Evil Empire?")].

At this stage of the proceeding, there is a genuine issue of material fact as to whether the malice element is satisfied.  Thus, summary judgment is not appropriate.

Thus, summary judgment is **DENIED** as it pertains to malicious prosecution.

### III.   Count II - Tortious Interference with Business Relationships & Expectancies

Under West Virginia law,

"'To establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages.  If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses.  Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial

16

interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper.'  Syl. Pt. 2, ***Torbett v. Wheeling Dollar Sav. & Trust Co.***, 173 W.Va. 210, 314 S.E.2d 166 (1983)." Syl. Pt. 5, ***Hatfield v. Health Mgmt. Assocs. of W.Va.***, 223 W.Va. 259, 672 S.E.2d 395 (2008).

Syl. Pt. 14, ***Ayersman v. Wratchford***, 246 W.Va. 644, 874 S.E.2d 756 (2022).

Defendants argue that the "undisputed material facts" demonstrate that Mr. Cantley made an illegal employment offer to the PSA physicians, resulting in the filing of the *qui tam* suit, and show that multiple physicians were paid well above the 90th percentile.  *See* [Doc. 329 at 33–34].  Defendants assert that "as a matter of law, any alleged 'interference' in Plaintiffs' business relationships was for a proper purpose."  [Id. at 34].  *See also* [Doc. 420 at 20–21].

In response, plaintiffs argue that defendants "falsely claim that the facts are undisputed, and that those facts show their *qui tam* was a justified attempt to fight fraud." *See* [Doc. 356 at 31–32].  Plaintiffs state that defendants assert the defense of justification, or "proper purpose," in filing the *qui tam* complaint.  *See* [id. at 31].  Moreover, plaintiffs assert that by filing the *qui tam*, defendants "hoped to—and did—harm Plaintiffs' business relationships and reputation."  *See* [id. at 32].

The United States Court of Appeals for the Fourth Circuit has defined "absence of justification" as "conduct that is carried out for an improper purpose, such as malice or

spite, or through improper means, such as violence or intimidation." ***BCD LLC v. BMW Mfg. Co., LLC***, 360 F.App'x 428, 435 (4th Cir. 2010) (citing ***Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co.***, 992 F.2d 59, 62 (4th Cir. 1993)).

As stated in the Malice section, *supra*, there is a genuine issue of material fact as to whether the alleged interference in plaintiffs' business was for a proper purpose. Thus, summary judgment is not appropriate. Accordingly, summary judgment is **DENIED** as it pertains to tortious interference with business relationships and expectancies.

## IV.    Count III - Abuse of Process

Under West Virginia law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by the process." ***Preiser v. MacQueen***, 177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985).

Defendants argue, again, that they did not issue any process, much less abuse that process. *See* [Doc. 329 at 34–37]. Defendants assert that no evidence has been provided by plaintiffs that defendants took any actions after the issuance of process. *See* [id. at 36]. Defendants state "[t]here is no evidence that Defendants used process, assuming *arguendo* they had issued *any* process, for an ulterior purpose other than pursuing their FCA action." [Id.]. *See also* [Doc. 420 at 21–22].

In response, plaintiffs argue that defendants cannot state that they did not issue process here when they filed the complaint and triggered the ensuing investigation. *See* [Doc. 356 at 332–34]. Plaintiffs state that the record demonstrates that defendants improperly used the *qui tam* process to promote false information and unsupported

accusations with the express purpose of harming plaintiffs. *See* [id. at 33]. For example, plaintiffs state that defendants used the investigation triggered by their *qui tam* action to spread the word throughout the local community that defendants were under federal investigation. *See* [Doc. 356-3 at 27 ("Did you hear that MMH is under DOJ/OIG investigation for Fraud and Abuse? Been going on for almost a year now.")].

Viewing all inferences in the light most favorable to the party opposing the motion, this Court believes granting summary judgment is not appropriate. There is clearly a dispute in material fact over whether defendants misapplied lawfully issued process to accomplish their goal of harming plaintiffs and whether defendants continued to pursue that initiative well after their initial issuance of process. Thus, summary judgment is **DENIED** as it pertains to abuse of process.

## V.    Count IV - Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a

Defendants request dismissal of Count IV – Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a. *See* [Doc. 118 at 20–22]. That statute, West Virginia Code § 61-5-27a, provides as follows:

(b) *Fraudulent[3] official proceedings*.- It is unlawful for a person to knowingly engage in a fraudulent official proceeding or legal process[4].

(c) *Fraudulent filings*.- It is unlawful for a person to knowingly cause a public official or employee to file, record or deliver a fraudulent claim in

---

[3] "'Fraudulent' means not legally issued or sanctioned under the laws of this State or of the United States, including forged, false, and materially misstated[.]." *See* W.Va. Code § 61-5-27(a)(1).

[4] "'Legal process' means an action . . . to pursue a claim against person or property." *See* W.Va. Code § 61-5-27(a)(2).

indebtedness, common law lien or other lien, financial statement, complaint, summons, judgment, warrant or other legal process, including those issued as the result of a fraudulent official proceeding.

(d) *Fraudulent service*.- It is unlawful for a person to knowingly serve a public official or employee with a fraudulent claim of indebtedness, common law lien or other lien, financial statement, complaint, summons, judgment, warrant or other legal process, including those issued as the result of a fraudulent official proceeding.

. . .

(h) *Civil cause of action*.- A person who violates this section is liable in a civil action to any person harmed by the violation for injury or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs and other expenses incurred as a result of prosecuting the civil action commenced under this subsection, which is not the exclusive remedy of a person who suffers injury or loss to person or property as a result of a violation of this section.

(i) *Civil sanctions*.- In addition to the criminal and civil penalties set forth in this section, a fraudulent official proceeding or legal process brought in a tribunal in violation of this section shall be dismissed by the tribunal and the person may be ordered to reimburse the aggravated person for reasonable attorney's fees, court costs and other expenses incurred in defending or dismissing such action.

W.Va. Code § 61-5-27a(b)–(d), (h)–(i).

Defendants argue that plaintiffs' claim under W.Va. Code § 61-5-27a fails because subsection (k)(3) makes clear that "[n]othing in this section prohibits or in any way limits a person's lawful and legitimate access to a tribunal of this state, or prevents a person from instituting or responding to a lawful action." W.Va. Code § 61-5-27a(k)(3). Defendants state that their involvement in the underlying *qui tam* suit was lawful and legitimate. [Doc. 329 at 37]. *See also* [Doc. 420 at 22–23].

In response, plaintiffs argue defendants involvement in the underlying *qui tam* was unlawful and illegitimate based on discovery that has revealed "countless allegations contained with the Underlying Complaint are false." *See* [Doc. 356 at 34–35].

Viewing all inferences in the light most favorable to the party opposing the motion, this Court believes granting summary judgment is not appropriate. Again, there is clearly a dispute in material fact over whether defendants involvement in the underlying *qui tam* was lawful or unlawful. Thus, summary judgment is **DENIED** as it pertains to Fraudulent Legal Process in Violation of W.Va. Code § 61-5-27a.

## VI.    Count V - Civil Conspiracy

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. Pt. 8, ***Dunn v. Rockwell***, 225 W.Va. 43, 689 S.E.2d 255 (2009).

"A civil conspiracy is not a ***per se***, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who do not actually

commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)."  Syl. Pt. 9, **Dunn**, 225 W.Va. 43, 689 S.E.2d 255.  "'The gist of a civil conspiracy is the damage resulting from commission of a wrong that injures another and not the conspiracy itself.  Thus an actionable civil conspiracy must consist of wrongs that would have been actionable against the conspirators individualy.'" **Dunn**, 225 W.Va. at 57, 689 S.E.2d at 269 (quoting **Hurlbut v. Gulf Atlantic Life Ins. Co.**, 749 S.W.2d 762 (Tex. 1987)).

Defendants argue that the undisputed material facts demonstrate that defendants committed no underlying wrongs which could serve as the basis of plaintiffs' civil conspiracy claim.  *See* [Doc. 329 at 37–38 & Doc. 420 at 23].

In response, plaintiffs argue that "the material facts of this case demonstrate that there is a dispute as to whether Defendants committed any wrongdoings when initiating, pursuing, and filing the Underlying Action in order to harm Plaintiffs."  *See* [Doc. 356 at 36].

There is a material dispute as to whether defendants committed any wrongdoings when initiating, pursuing, and filing the *qui tam* suit.  Thus, summary judgment is not appropriate and summary judgment is **DENIED** as it pertains to civil conspiracy.

## VII.    Lack of Expert Witness

Defendants argue they are entitled to summary judgment because plaintiffs lack an expert witness to explain the "intricacies of the complex field of *qui tam* litigation."  *See* [Doc. 329 at 38–39].  Defendants state plaintiffs lack an expert to support their claims and rebut the testimony of Mr. Nettles and Mr. Vroon.  *See* [id. & Doc. 420 at 23–24].

22

In response, plaintiffs state that they "have not produced an expert who will opine as to, the law of *qui tams*, the government's declination, or what conclusions the government reached in choosing to dismiss the underlying action. Why? Because such 'expert' testimony is improper." *See* [Doc. 356 at 36].

This Court agrees with plaintiffs. Plaintiffs are not required to present a rebuttal expert witness to address two "expert opinions" in order to survive summary judgment. Defendants provide a litany of cases in support of their argument. *See* [Doc. 329 at 38, fn.11]. None of the cases cited by defendants demand summary judgment where a party's expert is not rebutted by another expert.

Thus, defendants are not entitled to summary judgment based on plaintiffs not having an expert witness to explain the "intricacies of the complex field of *qui tam* litigation."

## VIII. *Noerr-Pennington* doctrine

The *Noerr-Pennington* doctrine is an affirmative defense that grants First Amendment immunity to those who engage in petitioning activity, including the pursuit of litigation. *See* **IGEN Int'l, Inc. v. Roche Diagnostics GmbH**, 335 F.3d 303, 310 (4th Cir. 2003); **California Motor Transp. Co. v. Trucking Unltd.**, 404 U.S. 508, 510 (1972). The doctrine universally applies to business torts. *See, e.g.*, **Cheminor Drugs, Ltd. v. Ethyl Corp.**, 168 F.3d 119, 128–29 (3d Cir. 1999) (doctrine applies to common law claims of malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition). The application of **Noerr-Pennington** is a question of law. **TEC Cogeneration Inc. v. Fla. Power & Light Co.**, 76 F.3d 1560, 1567 (11th Cir. 1996), *modified on rehearing by* 86 F.3d 1028 (11th Cir.

1996).  The burden is on the party opposing application of **Noerr-Pennington** to allege facts sufficient to show that it does not apply.  **IGEN Int'l Inc.**, 335 F.3d at 311 (citing **McGuire Oil Co. v. Mapco, Inc.**, 958 F.2d 1552, 1558 n.9 (11th Cir. 1992)).

The doctrine is subject to a "sham" exception.  To be a "sham," litigation must meet a two-part definition:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under **Noerr**, and an antitrust claim premised on the sham exception must fail.  Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.  Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere **directly** with the business relationships of a competitor," **Noerr**, *supra*, 365 U.S., at 144 (emphasis added), through the "use [of] the governmental **process**—as opposed to the **outcome** of that process—as an anticompetitive weapon," [**Columbia v.**] **Omni** [**Outdoor Advertising, Inc.**,] 499 U.S. [365,] 380.  This two-tiered process requires the plaintiff to disprove the challenged lawsuit's **legal** viability before the court will entertain evidence of the suit's **economic** viability.

**Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.**, 508 U.S. 49, 60–61 (1993).

Defendants argue that they are immune to the totality of plaintiffs' claims as the *Noerr-Pennington* doctrine protects the right to pursue litigation and petition the government.  *See* [Doc. 329 at 39–41].  Defendants state there is "a plethora of evidence which establishes that the *qui tam* suit was not objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  [Id. at 41].  *See also* [Doc. 420 at 24–25].

In response, plaintiffs argue defendants are not immune to any of plaintiffs' claims based on the *Noerr-Pennington* doctrine. Plaintiffs state the *qui tam* action was "premised entirely on false and materially misstated statements."  *See* [Doc. 356 at 39].  Moreover, plaintiffs argue that neither defendants nor their attorney conducted a factual investigation before filing the underlying action to confirm the accuracy of the allegations contained therein.  *See* [id.].  Plaintiffs also assert they satisfy both prongs of the "sham litigation" exception to the *Noerr-Pennington* doctrine.  *See* [id. at 40–41].

There is no dispute that the *Noerr-Pennington* doctrine does not apply to immunize a defendant from an abuse of process claim.  *See Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 400 (4th Cir. 2001) (explaining that *Noerr-Pennington* would not apply upon a "showing of clear abuse of process" (citation and internal quotation marks omitted)).  However, there is a clear dispute between the parties as to whether the underlying action was premised entirely on false and materially misstated statements.  Both parties provide factual bases for why the underlying action was or was not objectively baseless.  Thus, because there is a dispute as to whether the underlying action was a "sham" or not, this Court refuses to grant immunity to defendants under the *Noerr-Pennington* doctrine.

## IX.   False Claims Act

Defendants contend, for the fourth time, that the False Claims Act ("FCA") preempts any damages action in this case.  *See* [Doc. 41–42].  "Federal preemption is based on the Supremacy Clause, which provides that federal law 'shall be the supreme Law of the Land.'"  ***Simmons v. Sabine River Auth. La.***, 732 F.3d 469, 473 (5th Cir. 2013) (quoting U.S. Const. Art. VI, Cl. 2).  "Preemption radically alters the balance of state and federal authority, so the Supreme Court has historically refused to impose that alteration interstitially."  ***White Buffalo Ventures, LLC v. Univ. of Tex. at Austin***, 420 F.3d 366, 370 (5th Cir. 2005) (citing ***Gregory v. Ashcroft***, 501 U.S. 452, 460 (1991)).  This principle has been expressed as a "presumption against preemption of state law."  ***Id***. (citations omitted); ***United States ex rel. Rigsby v. State Farm fire & Cas. Co.***, 2015 WL 13649420, at *6 (S.D. Miss. Aug. 6, 2015) (Ozerden, J.).

"Federal law will preempt and displace state law in three circumstances: (1) when Congress enacts a statute that explicitly preempts state law; (2) when Congress regulates in such a pervasive manner that it can be inferred Congress intended to displace state law in the field and; (3) when state law actually conflicts with federal law.  *See, e.g.*, ***English v. Gen. Elec. Co.***, 496 U.S. 72, 78–79 (1990)."  ***Glynn v. EDO Corp.***, 536 F.Supp.2d 595, 609 (D. Md. 2008) (Motz, J.).

"Of course, our preemption inquiry must '"start [ ] with the basic assumption that Congress did not intend to displace state law."'  ***S. Blasting*** [***Servs., Inc. v. Wilkes County***], 288 F.3d at 589 (quoting ***Maryland v. Louisiana***, 451 U.S. 725, 746 (1981)); *see also* ***Cipollone*** [***v. Liggett Group, Inc.***], 505 U.S. at 516 ('Consideration of issues arising

26

under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress.' (internal quotation marks and alterations omitted)). The purpose of Congress is therefore the 'ultimate touchstone' of a preemption analysis. ***Cipollone***, 505 U.S. at 516 (internal quotation marks omitted). As a general proposition, the presumption that Congress did not intend to preempt state law is especially strong when it has legislated '"in a field which the States have traditionally occupied,"' such as 'protecting the health and safety of their citizens.' ***S. Blasting***, 288 F.3d at 590 (quoting ***Medtronic, Inc. v. Lohr***, 518 U.S. 470, 485 (1996) (internal quotation marks omitted)); *see also* ***Abbot v. Am. Cyanamid Co.***, 844 F.2d 1108, 1112 (4th Cir. 1988). And, the presumption is stronger still 'against preemption of state remedies, like tort recoveries, when no federal remedy exists.' ***Abbot***, 844 F.2d at 1112 (citing ***Silkwood*** [***v. Kerr-McGee Corp.***], 464 U.S. at 251, 104 S.Ct. 615)." ***Anderson v. Sara Lee Corp.***, 508 F.3d 181, 192 (4th Cir. 2007).

Defendants spend half a page citing by incorporation their prior arguments. *See* [Doc. 41–42]. Defendants provide no additional support and maintain that the case law previously cited should be relied on by this Court to preempt plaintiffs' claims. *See* [Id.].

In response, plaintiffs "likewise incorporate their prior arguments against preemption, as well as this Court's prior rejection of them." *See* [Doc. 256 at 42].

As this Court has held previously:

[Defendants] do not, however, cite to any case in which a court found that the FCA in fact preempted state remedies for improper conduct - presumably because there are none.

The plaintiffs, on the other hand, cite a number of cases which find no preemption. *See e.g.* ***Salazar v. Monaco Enterprises, Inc.***, 2015 WL 5716000, at *2 (E.D. Wash. Sept. 29, 2015) ("Defendants contend the False Claims Act ("FCA") provides an exclusive remedy. The published case law on this point holds to the contrary.). *E.g.*, ***Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.***, 277 F.3d 936 (7th Cir. 2002) ("There is nothing in § 3730(h) to lead us to believe that Congress intended to preempt all state law retaliatory discharge claims based on allegations of fraud on the government."); ***Glynn v. EDO Corp.***, 536 F.Supp.2d 595 (D. Md. 2008) (complementary remedies do not give rise to an inference of Congressional intent to preempt); ***Hoefer v. Fluor Daniel, Inc.***, 92 F.Supp.2d 1055 (C.D. Cal. 2000); ***Palladino v. VNA of Southern N.J.***, 68 F.Supp.2d 455 (D. N.J. June 30, 1999) (holding no congressional intent to occupy the field of retaliatory discharge to the exclusion of the states). The Court finds these cases persuasive on the issue of preemption. . . .

"As one court recognized, '[w]hile the [FCA] ***permits*** any person ... to bring a *qui tam* suit, it does not authorize that person to violate state laws in the process.'" ***United States v. Quest Diagnostics Inc.***, 734 F.3d 154, 163

28

(2d Cir. 2013) (quoting *United States ex rel. Doe v. X. Corp.*, 862 F.Supp. 1502, 1507 (E.D. Va. 1994) (Ellis, J.) (emphasis supplied)).

The case law also makes clear that a defendant can bring state law claims which are independent of a finding of liability on the part of the defendant.  "Counterclaims for indemnification or contribution by definition *only* have the effect of offsetting liability.  Counterclaims for independent damages are distinguishable, however, because they are not dependant on a qui tam defendant's liability."  *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830–31 (9th Cir. 1993).

The *Madden* Court added:

> To some extent a qui tam defendant's interests are adequately protected by specific provisions of the FCA. Section 3730(d)(4) of the FCA provides that a court may award the defendant reasonable attorney's fees and expenses if the defendant prevails and the action was brought in bad faith. Moreover, § 3730(d)(3) limits the award of a qui tam plaintiff deemed to be a wrongdoer.

> These remedies are inadequate for two reasons, however.  First, recovering damages under the FCA's attorney's fees provision is difficult because of the exacting standards that must be met.  Under § 3730(d)(4) a qui tam defendant must establish that the plaintiff's action was clearly

frivolous, clearly vexatious or brought primarily for the purpose of harassment.  Second, these remedies do not provide for complete compensation.  A qui tam defendant is not made whole because it is unable to recover for the actual harm it suffered as a result of the relator's conduct.

Thus, we hold that qui tam defendants can bring counterclaims for independent damages. . . .

We recognize that our decision may encourage qui tam defendants to bring counterclaims for independent damages instead of indemnification.  However, we do not think this will result in an end run around **Mortgages**.  As the court in **United States ex rel. Burch** suggested, it is possible to resolve the issue of a qui tam defendant's liability before reaching the qui tam defendant's counterclaims.  145 F.R.D. at 457–58.  If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution.  On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits.

4 F.3d at 831.  *See also*, **United States ex rel. Battiata, M.D. v. Puchalski, M.D.**, 906 F.Supp.2d 451, 457 (D.S.C. 2012) (Currie, J.).

Similarly, in **United States ex rel. Miller v. Bill Harbert Intern. Const., Inc.**, Judge Lamberth held:

On the other hand, courts have held that "a qui tam defendant may maintain a claim for independent damages; that is, a claim that is not dependent on a finding that the qui tam defendant is liable." **United States ex rel. Stephens v. Prabhu**, 1994 WL 761237, at *1 (D. Nev. 1994).  These cases recognize that not all counterclaims in FCA cases will be contrary to the statute's interests, and that there would be real due process concerns if *all* counterclaims were to be barred, particularly compulsory ones, which would be lost forever.  *See* **Burch ex rel. U.S. v. Piqua Engineering, Inc.**, 145 F.R.D. 452, 456–57 (S.D. Ohio 1992) (expressing due process concerns); **Madden**, 4 F.3d at 830–31 (same); Kent D. Strader, Comment: **Counterclaims Against Whistleblowers: Should Counterclaims Against Qui Tam Plaintiffs be Allowed in False Claims Act Cases?**, 62 U. Cinn. L. Rev. 713 (1993) (same).  For these reasons, it has been said that "the modern trend does not support a ban on compulsory counterclaims which are based on damages which are 'independent' of the qui tam claim." **United States ex rel. Mikes v. Straus**, 931 F.Sup.. 248, 263 (S.D. N.Y. 1996).  Yet

at the same time, these cases have warned that "[i]f a qui tam defendant is found liable the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution." ***United States ex rel. Madden v. General Dynamics Corp.***, 4 F.3d 827, 830–31 (9th Cir. 1993).

*     *     *

The second category of permissible claims by an FCA defendant is where the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found *not* liable in the FCA case.  This is where the word "independent" has sewn confusion.  These claims are actually quite dependent, but they depend on a finding that the FCA defendant is not liable, whereas the impermissible class of claims depend on the FCA defendant being found liable.  The FCA defendant thus has a cause of action for damage to him independent of his FCA liability.  These claims have surfaced in the form of libel, defamation, malicious prosecution, and abuse of process—claims that succeed upon a finding that the relator's accusations were untrue.  Once the question of FCA liability has been determined in the defendant's favor, there is less of the risk, envisioned by ***Mortgages*** and other cases, of

32

deterring would-be relators, and no risk that a wrongdoer will be allowed to shift its costs.   The simple rule that emerges from these cases is therefore that a claim by an FCA defendant which requires for its success a finding that the FCA defendant is liable is the kind of claim barred by the FCA.

These cases demonstrate that there are two ways in which an FCA defendant's counterclaim may seek "independent damages" and thus be permissible.   The use of the word "independent" has led to some confusion, and courts would be better served to describe the permissible claims as "not dependent on the fact of FCA liability."   In short form, claims by an FCA defendant have been properly permitted where the success of the FCA defendant's claim does not *require* a finding that the defendant is liable in the FCA case.

505 F.Supp.2d 20, 27–28 (D. D. C. 2007) (Lamberth, J.).

Finally, in **United States ex rel. Rigsby v. State Farm Fire & Cas. Co.**, Judge Ozerden added:

The Ninth Circuit has held that there is "no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action" and that "there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."   **Mortgages [Inc. v. U.S. Dist. Ct. For**

33

*Dist. of Nev. (Las Vegas)*], 934 F.2d at 214.  The Ninth Circuit have distinguished counterclaims which seek "independent damages" form those which seek indemnification and/or contribution.  *Cell Therapeutics* [*Inc. v. Lash Group, Inc.*], 586 F.3d at 1208 (citing *Madden*, 4 F.3d at 831).  "It is incumbent on the district court to separate those claims which '*only* have the effect of offsetting liability' from those that are not dependent on a qui tam defendant's liability under the FCA."  *Id*. at 1209 (quoting *Madden*, 4 F.3d at 831 (emphasis in original).  Claims falling into the latter category are not precluded, while the former ones "must be dismissed if [the *qui tam* defendant] is liable under the FCA."  *Id*. at 1210 (citing *Madden*, 4 F.3d at 831).  The Court finds this reasoning persuasive.

2015 WL 13659420, at *6 (S.D. Miss. Aug. 6, 2015).

[Doc. 40 at 5–10].  Based upon all the foregoing, this Court again finds there is nothing in the FCA which prevents plaintiffs from maintaining its state court actions against these defendants.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants Michael A. King, Michael D. Roberts, M.D., and Todd Kruger's Motion for Summary Judgment [**Doc. 328**] is **DENIED**.

Moreover, Plaintiffs' Motion to Deny or, in the Alternative, Defer Defendants' Motion for Summary Judgment [**Doc. 357**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to all counsel on record.

**DATED:** February 23, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE